*Formatted for Electronic Distribution* *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
10/13/2026

---

**In re:**

| | |
|---|---|
| **KEVIN E. BEAN,** | **Case No. 26-10200** |
| **Debtor.** | **Chapter 13** |

---

*Appearances:*

| | |
|---|---|
| *Todd Taylor, Esq.*<br>*Law Offices of Todd Taylor, P.C.*<br>*Burlington, Vermont*<br>*For the Debtor* | *Jeffrey Hardiman, Esq.*<br>*Brock & Scott, PLLC*<br>*Winston-Salem, North Carolina*<br>*For Santander Bank, N.A.* |
| *Andrea E. Celli, Esq.*<br>*7 Southwoods Blvd.*<br>*Albany, New York 12211*<br>*Chapter 13 Trustee* | *Jocelyn Brown, Esq.*<br>*U.S. Attorney's Office for the District of Vermont*<br>*Burlington, Vermont*<br>*For the Internal Revenue Service* |

## MEMORANDUM OF DECISION DETERMINING DEBTOR'S INELIGIBILITY FOR RELIEF UNDER THE BANKRUPTCY CODE

On August 12, 2026, Debtor filed an Emergency Motion to Continue the Automatic Stay under 11 U.S.C. § 362(c)(3).[1] The Court held a hearing on the Motion on September 1, 2026. At that hearing, the Chapter 13 Trustee (Trustee) raised the issue of Debtor's eligibility under 11 U.S.C. § 109(g)(2).[2] Debtor did not have proper notice that his eligibility under § 109(g)(2) would be addressed, so the Court invited further briefing and set an evidentiary hearing to determine Debtor's eligibility for relief under the Bankruptcy Code. The Court ordered the automatic stay to remain in effect while the Court addresses this issue.

For the reasons set forth below, the Court determines Debtor is not eligible for relief under the Bankruptcy Code.

---

[1] ECF 3. Unless otherwise indicated, all references to the record refer to the above-captioned case.

[2] Unless otherwise indicated, all statutory references refer to title 11 of the United States Code (the Bankruptcy Code).

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157 (b)(2)(A) and (G), over which this Court has constitutional authority to enter a final judgment.

## BACKGROUND

Debtor filed a chapter 13 petition on January 14, 2026 (the Prior Case).[3] His Chapter 13 Plan drew objections from the Trustee, Wells Fargo, and Santander Bank, N.A. (Santander). The Trustee objected to confirmation based upon the Plan's failure to properly treat pre-petition arrears, Debtor's failure to timely submit tax returns for 2024 and 2025, and his failure to submit documentation required under § 521.[4] Wells Fargo objected to confirmation based upon the Plan's failure to properly treat pre-petition arrears, its failure to properly structure the proposed sale of Wells Fargo's collateral, and on the basis that Debtor's income was insufficient to properly treat Wells Fargo's claim.[5] Santander objected to confirmation for the same reasons as Wells Fargo.[6]

In April 2026, Santander filed a Motion for Relief from the Automatic Stay, seeking to foreclose a mortgage secured by its collateral (the Santander Motion).[7] As indicated in the Santander Motion, Debtor incurred a pre-petition arrearage of $57,563.28 and a post-petition arrearage of $5,089.02 on his mortgage. Accordingly, the Santander Motion sought relief from the automatic stay to exercise its non-bankruptcy rights under the mortgage.

Before the Court ruled on the Santander Motion, Debtor voluntarily dismissed his case pursuant to § 1307(b).[8] Debtor did not provide any reason for his decision to seek dismissal.[9] Based upon Debtor's absolute right to dismiss a case under chapter 13, the Court granted Debtor's Motion to Dismiss without

---

[3] *In re Bean*, Case No. 26-10009, ECF 1.

[4] *Id.*, ECF 33.

[5] *Id.*, ECF 28.

[6] *Id.*, ECF 31. While their bases for objection were the same, Wells Fargo and Santander held mortgages secured by different properties. Debtor proposed selling both properties, and both creditors found the proposed sale procedures insufficient.

[7] *Id.*, ECF 38.

[8] *Id.*, ECF 41.

[9] *See id.*, ECF 40. *See also* Audio Recording of Hearing, May 12, 2026, at 00:34 – 1:04.

further inquiry on May 13, 2026.[10]

Debtor commenced the current case on August 11, 2026.[11] The next day, Debtor filed an Emergency Motion to Continue the Automatic Stay (the Motion).[12] In the Motion, Debtor indicates his prior case was filed on an emergency basis "to stop pending foreclosures," but that the case ultimately failed because his income was insufficient. In support of the Motion, Debtor represented he "plans to sell [a property] which is currently in foreclosure." Debtor hoped to sell the property which collateralizes Santander's claims as set forth in the Santander Motion.

The Court held a hearing on the Motion on September 1, 2026. At that hearing, the issue of Debtor's eligibility under § 109(g)(2) was raised. Debtor was not put on proper notice that his eligibility would be addressed, so the Court invited further briefing and set an evidentiary hearing to resolve this issue.[13]

On September 8, 2026, Debtor's counsel filed an affidavit which outlined the bases for Debtor's voluntary dismissal (Counsel's Affidavit).[14] Counsel's Affidavit indicates Debtor entered into an agreement to sell one of his properties and was worried the buyers' interest depended on the sale closing as soon as possible.[15] If the sale was contingent on court approval or title insurance review (as required when property of the estate is sold under the Bankruptcy Code), Debtor worried the buyers would abandon the sale.

Counsel's Affidavit also indicated dismissal was necessary to avoid paying a commission to the Trustee from the proceeds of the sale. Debtor hoped to use these proceeds to repay Santander. To that end, Debtor sought dismissal to ensure the property at-issue sold "to prevent foreclosure" of Santander's collateral.[16]

On September 22, 2026, the Court considered evidence on Debtor's eligibility under § 109(g)(2). Debtor's counsel reiterated the arguments made in Counsel's Affidavit and argued the Court should interpret the § 109(g)(2) bar to require a causal link between the Santander Motion and the request for

---

[10] *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999).

[11] ECF 1.

[12] ECF 3.

[13] ECF 26.

[14] ECF 30.

[15] The property at-issue in this agreement did not secure either Santander's mortgage or Wells Fargo's mortgage.

[16] ECF 30.

dismissal. Under this approach, Debtor argued § 109(g)(2) would not bar his eligibility.[17] Debtor testified that the prior case was not dismissed for abusive reasons, but rather to effectuate the sale of real estate as described in the Affidavit.[18]

The Trustee reiterated her understanding that § 109(g)(2) depends only upon the timing of a stay relief motion and a subsequent request for dismissal, notwithstanding any causal link between the motion and the dismissal.[19] The Internal Revenue Service did not take a position on the proper interpretation, but noted the United States tends to construe unambiguous statutes as written.[20]

## DISCUSSION

"[N]o individual or family farmer may be a debtor under [the Bankruptcy Code] who has been a debtor in a case pending under [the Bankruptcy Code] at any time in the preceding 180 days if the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362".[21]

Courts disagree on the proper scope of § 109(g)(2). It bars re-filing when a Debtor seeks dismissal following a motion for relief from the automatic stay, but courts interpret the statutory use of "following" differently. Three approaches have emerged: a strict (or temporal) approach; a causal approach; and an equitable approach.[22] The Second Circuit has not addressed the proper interpretation of "following," so the Court will address each approach in turn.

### A. The Strict or Temporal Approach

Courts applying the strict or temporal approach read the statute to impose a mandatory bar to refiling against any debtor who requests and obtains a voluntary dismissal after a request for relief from the automatic stay "regardless…whether there was any connection between a debtor's voluntary dismissal and the creditor's request."[23] In *Andersson*, the secured creditor filed a motion for relief from automatic stay in May 1995. The matter was set for a hearing, which was ultimately cancelled when the parties indicated the

---

[17] Audio Recording of Hearing, Sept. 22, 2026, at 03:52 – 07:08.

[18] Id., at 20:42 – 23:52.

[19] Id., at 09:50 – 10:09.

[20] Id., at 10:12 – 10:47.

[21] § 109(g)(2).

[22] *In re Fletcher*, 599 B.R. 282, 286 (Bankr. E.D. Va. 2019).

[23] *In re Andersson*, 209 B.R. 76, 77-78 (B.A.P. 6th Cir. 1997).

matter was settled. An order granting conditional relief from the stay was entered in September 1995, and the Debtors sought and obtained voluntary dismissal of their case in November 1995. Debtors filed a subsequent petition in February 1996 and conceded that both cases were filed to frustrate the creditor's foreclosure efforts. The creditor filed a motion to dismiss the subsequent case. The bankruptcy court granted the motion.

The U.S. Bankruptcy Appellate Panel of the Sixth Circuit affirmed the dismissal. The Panel noted that the "plain meaning of a statute is conclusive except in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."[24] That exception did not apply, since "literal application of the statute comports with the drafter's express intention to prevent repeated invocation of the automatic stay."[25] This may be a severe outcome, but it is one the debtor knowingly accepts when they dismiss their case after a creditor moves for stay relief.

In this case, the Trustee argues the plain language of the statute mandates application of the strict or temporal approach.

**B. The Causal Approach**

Courts applying the causal approach read the statute to imply "some relationship between the motion for relief from stay and the voluntary dismissal."[26] Under the causal approach, courts bar re-filing only when the facts indicate the request for relief triggered the request for dismissal.

This Court briefly addressed the issue in 2003, and adopted the causal approach.[27] The joint debtors in that case first filed a chapter 13 petition on June 30, 2000.[28] Their mortgage creditor filed a motion for relief from the automatic stay on December 13, 2001 (the TMS Motion), and it was conditionally granted via stipulation in January 2002.[29] Debtors failed to uphold their obligations under the stipulation and the mortgage creditor was allowed to commence foreclosure proceedings on August 19, 2002.[30]

On December 20, 2002, DaimlerChrysler Services North America LLC (DaimlerChrysler) similarly

---

[24] *Id*. at 78 (*quoting United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).

[25] *Id*. at 78.

[26] *In re Duncan*, 182 B.R. 156, 159 (Bankr. W.D.W. Va. 1995).

[27] 2003 WL 22872152 (Bankr. D. Vt. 2003).

[28] *In re Keefe,* Case No. 00-10751, ECF 1.

[29] *Id*., ECF 19, ECF 27.

[30] *Id*., ECF 31.

filed a motion for relief from the automatic stay (the DaimlerChrysler Motion), which was granted on January 13, 2003.[31] Debtors requested their case to be dismissed on January 29, 2003, and the case was dismissed two days later.[32] Debtors re-filed on May 1, 2003.[33]

The Court likened § 109(g)(2) to a fishing net, which should only be cast "as wide as is necessary to cull out abusive filings,…[while] scrupulously reviewing the catch to ensure release of those cases which meet the technical requirements of the statute, but are not the intended prey."[34]

The Court found the TMS Motion, which was granted approximately six months before the case was dismissed, "was not sufficiently close in time to the date of the Debtor's voluntary dismissal of that case to be the motivation for the Debtor's current bankruptcy filing."[35] The Court similarly found the DaimlerChrysler Motion could not have motivated the request for dismissal because DaimlerChrysler obtained possession of its collateral before the debtors requested dismissal.[36] The Court accordingly declined to dismiss the case on the basis the joint debtors were ineligible under § 109(g)(2).

The current case is distinguishable from *Keefe*. The TMS Motion in *Keefe* could not have motivated dismissal because it was granted almost six months before the request for dismissal.[37] The same cannot be said about the Santander Motion in the Prior Case, which Santander filed less than a month before Debtor moved to dismiss.

The DaimlerChrysler Motion in *Keefe* could not have motivated debtors' dismissal because DaimlerChrysler had already obtained possession of its collateral when the dismissal was requested. Section 109(g)(2) was not implicated because the subsequent filing could not impede DaimlerChrysler's rights.[38] Unlike *Keefe*, the Santander Motion was never granted in the Prior Case, so a subsequent re-filing (and re-imposition of the automatic stay) would continue to impede Santander's rights. Nevertheless, Debtor asserts that the Motion to Dismiss was not directly related to Santander's Motion such that Debtor is eligible under

---

[31] *Id.*, ECF 37, ECF 39.

[32] *Id.*, ECF 41, ECF 42.

[33] *In re Keefe*, Case No. 03-10681, ECF 1.

[34] *Keefe*, 2003 WL 22872152, at *3.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

the Causal Approach to § 109(g)(2).

### C. The Equitable Approach

Courts applying the equitable approach decline to bar re-filing if doing so would produce an illogical or unjust result.[39] This approach relies on caselaw which cautions bankruptcy courts against interpreting statutes to "establish[] statutory schemes that are illogical, unjust, or capricious."[40] In *Luna*, the debtor dismissed her first Chapter 13 case after her mortgage creditor secured relief from the automatic stay. The creditor was directed not to commence foreclosure proceedings until it had provided the debtor with a payoff statement. The parties dispute whether this statement was actually provided, and the debtor filed a subsequent chapter 13 petition. The creditor had specific knowledge of the subsequent filing but proceeded nevertheless with a foreclosure sale. The debtor argued this sale violated the automatic stay, and the creditor argued that the automatic stay was never in effect because § 109(g)(2) prohibited Debtor's re-filing.

The United States Bankruptcy Appellate Panel for the Ninth Circuit considered whether § 109(g)(2) provides a mandatory bar against re-filing, or a discretionary bar. The Panel declined to find a mandatory bar, finding it "would reward [the creditor] for acting in bad faith and punish Luna for acting in good faith."[41] It accordingly found application of § 109(g)(2) discretionary, and concluded the bankruptcy court properly exercised its discretion by denying the creditor's motion to dismiss. No party in interest argues in this case for the equitable approach.

## APPLICATION

The Court "must presume that [Congress] says in a statute what it means and means in a statute what it says there."[42] "Unless otherwise defined," the words in a statute "are assumed to carry their ordinary, contemporary, common meaning." This suggests the Court should interpret words using *only* their most ordinary, most contemporary, and most common meaning; considering any alternative definitions would increase ambiguity.[43] If the common meaning of the statutory text is unambiguous, the court's review "generally ends and the statute is construed according to the plain meaning of its words."[44] Courts

---

[39] *In re Luna*, 122 B.R. 575 (B.A.P. 9th Cir. 1991).

[40] *Bechtel Constr., Inc. v. United Bhd. of Carpenters & Joiners of America*, 812 F.2d 1220, 1225 (9th Cir. 1987).

[41] *Luna*, 122 B.R. at 577.

[42] *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (*citation omitted*).

[43] *HSB Grp., Inc. v. SVB Underwriting, Inc.*, 664 F.Supp.2d 158, 190 (D. Conn. 2009) ("Ambiguity exists when there is uncertainty or indistinctness in the meaning of the language used.").

[44] *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998).

interpreting an unambiguous statute cannot look to legislative history to guide its interpretation.[45] The Supreme Court has further advised courts to avoid "reading into statutes words that aren't there."[46]

The word "following" has not been defined in the Bankruptcy Code. The Court therefore assumes it carries its ordinary, contemporary, common meaning. The Court is mindful that some courts have found the word "following" to be ambiguous as used in § 109(g)(2). It is not, however, persuaded by the arguments in support of that perceived ambiguity.

In *In re Duncan*, the Court turned to dictionaries and thesauruses to find the ordinary, contemporary, common meaning of the word. The most ordinary meaning of the word "following" in Webster's Dictionary was "to come or go after." The fifth meaning provided was "to be the result of," and the ninth meaning provided was "to be evident as a consequence of…".[47] Likewise, Roget's Thesaurus provided the definition "to occur after (another) in time," before the definition "to occur as a consequence…".[48]

The *Duncan* Court correctly noted these later definitions were common, ordinary uses of the word, then turned to legislative history to find they were the most likely uses intended by Congress. However, Second Circuit precedent prevents this Court from turning to legislative history given the unambiguous meaning provided by the word's most ordinary, contemporary, and common definition.[49]

This Court finds the most ordinary, contemporary, and common definition of "following" to be "coming or going after," or "occurring after [something else] in time."[50] The plain language of the statute supports the strict or temporal approach. Any other interpretation of § 109(g)(2) requires more of the Court than what Congress articulated within the statute itself. The Court therefore adopts the strict or temporal approach.

The causal approach reads into § 109(g)(2) a limitation that it should only bar repeat filings which are "calculated solely to reap the benefits of the automatic stay and frustrate or delay enforcement of a secured creditor's foreclosure rights".[51] This limitation, which is not present in the text of the statute,

---

[45] *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 164 (2d Cir. 2003).

[46] *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020).

[47] *Duncan*, 182 B.R. at 159 (*citing* Webster's II New Riverside Univ. Dictionary 493 (1988)).

[48] *Id*. (*citing* Roget's II: The New Thesaurus 200 (1980)).

[49] *Gully*, 341 F.3d at 164.

[50] Webster's II New Riverside Univ. Dictionary 493 (1988); Roget's II: The New Thesaurus 200 (1980).

[51] *Keefe*, 2003 WL 2287215 at *3 (*citing In re Casse*, 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998)).

requires the Court to assess whether a debtor, by voluntarily dismissing after a motion for relief from stay was filed, is the intended target of § 109(g)(2), even if they indisputably meet the technical requirements of the statute. The plain language of the statute provides no such limitation, and the Court declines to read such a limitation into the statute.

As the *Luna* Panel explained, the equitable approach reads into § 109(g)(2) an exception in cases where its application would produce an illogical or unjust result. No exception is included within the statutory text. The equitable approach also involves reading permissive or discretionary language into the statute. Whereas Congress provided "no individual…may be a debtor" in the relevant context, Luna concludes some individuals may be debtors, subject to the discretion of the bankruptcy court. This is an important difference, as Luna's construction offers relief to individuals who would not be eligible under the plain language of the statute Congress enacted.

The Court adopts the strict or temporal approach and concludes that § 109(g)(2) bars re-filing for 180 days whenever a debtor seeks voluntary dismissal after a motion for stay relief has been filed. The Court finds Debtor sought a voluntary dismissal of his prior case after Santander filed a motion for stay relief. Debtor is therefore ineligible for relief under the Bankruptcy Code for 180 days from the date his prior case was dismissed.

## CONCLUSION

For the reasons set forth above, the Court finds Debtor is not eligible for relief under the Bankruptcy Code. This memorandum of decision constitutes the Court's findings of fact and conclusions of law. A separate order will follow.

October 13, 2026
Burlington, Vermont

Heather Z. Cooper
Heather Z. Cooper
United States Bankruptcy Judge